IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JACQUELYN L. SCHULTZ**  <br>*Administratrix of the Estate of John C.*  <br>*McCluskey, Deceased,*  <br>  <br>Plaintiff,  <br>  <br>v.  <br>  <br>**UNITED STATES OF AMERICA,**  <br>  <br>Defendant. | Civil Action No. 15-454 |

## **OPINION**

This is an action brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 ("FTCA"). (ECF No. 1 ¶ 11.) In their three-count complaint, plaintiffs, John and Joan McCluskey, accuse the United States of negligence and professional negligence in allowing Legionella bacteria to enter the potable water system at two Veterans Affairs Pittsburgh Healthcare System facilities: (1) University Drive Hospital and H.J. Heinz Campus. Mr. McCluskey visited the VA facilities for various tests and treatments between 2011 and 2013, and during a hospital stay in February 2013 was diagnosed with Legionnaires disease. (ECF No. 1 ¶¶25-32.) Mr. McCluskey recently died, and this action is now being pursued in the name of his estate. Mrs. McCluskey asserts a loss of consortium claim. (ECF No. 1 ¶¶ 93-94.)

On June 15, 2015, the government moved to dismiss Count III of the complaint, Mrs. McCluskey's loss of consortium claim. (ECF No. 7.) The government argues that this court lacks subject-matter jurisdiction because Mrs. McCluskey never filed a Standard Form 95 claim for damage, injury, or death ("SF-95"), which is a pre-requisite to filing suit under the FTCA. (ECF No. 7-1.) Plaintiffs acknowledge that administrative exhaustion is a prerequisite to

bringing suit, but contend that Mrs. McCluskey need not have filed her own, separate SF-95 because Mr. McCluskey's form indicated that he was married, thus putting the government on notice of Mrs. McCluskey's claim. (ECF No. 10 at 4.) Plaintiffs argue that the FTCA's purpose to promote fair settlement "is not hindered by the inclusion of [Mrs.] McCluskey's claim on the same administrative claim form as her husband." (Id.)

Plaintiffs further argue that even if Mrs. McCluskey were required to file her own SF-95, the doctrine of equitable estoppel should be applied to preserve her claim. (Id. at 4-5.) In support of this argument, plaintiffs contend that "the VA University Drive Hospital knew that Mrs. McCluskey had a claim, but was silent," "[plaintiffs] did not know their rights," and the government "should not benefit by their agents' affirmative failure to advise plaintiffs of their rights." (Id. at 5.)

Mrs. McCluskey's loss of consortium claim must be dismissed. Administrative exhaustion, by filing a SF-95, is a pre-requisite to filing suit. There are no facts in the record that would support plaintiffs' equitable estoppel argument.

## I. Lack of Subject-Matter Jurisdiction – Failure to Exhaust Administrative Remedies

### A. The Facts

Mr. McCluskey visited the VA University Drive Hospital and Heinz Campus on various occasions between 2011 and 2013, several of which he specifically lists in his complaint. (ECF No. 1 ¶¶ 25-28.) Mr. McCluskey avers that he drank from the water fountains during his visits, ate in the cafeteria and noticed during visits occurring in 2011 that the water fountains were designated as not usable. (Id. ¶¶ 29-30.) The complaint does not include any averment that Mrs. McCluskey visited the VA facilities with Mr. McCluskey. Mr. McCluskey was diagnosed

with Legionnaires disease in February 2013 after falling ill and being admitted to UPMC East. (Id. ¶ 32.)

The complaint alleges that "Plaintiffs" submitted a SF-95 providing notice of "these claims," but that the government "denied the claim." (ECF No. 1 ¶¶ 9-10.) The record reflects that attorney Peter Friday forwarded a SF-95 to the Office of the Regional Counsel on September 11, 2014. (ECF No. 16-1 at 2.) The cover letter stated that attorney Friday represented "John C. McCluskey in a claim for damages resulting from Mr. McCluskey contracting Legionnaires Disease" and enclosed a SF-95 "signed by Mr. McCluskey." (Id.) The SF-95 in the record is stamped received by the Pittsburgh Regional Counsel on September 12, 2014. (ECF No. 7-3 at 1.) The form was signed by Mr. McCluskey on August 30, 2014, states a claim based upon contraction of Legionnaire's Disease after visiting VA hospitals, and seeks $750,000 in damages. (Id.) Although Mr. McCluskey's marital status is listed as "married," Mrs. McCluskey's name does not appear on the SF-95, and no reference is made to any derivative injuries suffered by Mrs. McCluskey as a result of her husband's medical conditions.

B. The Law

1. The FTCA

The FTCA provides in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a). Further specification as to the filing of a proper administrative claim is set forth in 28 C.F.R. § 14.2(a), which provides in pertinent part:

> For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident.

28 C.F.R. § 14.2(a) (1994). SF-95 states that "each claimant should submit a separate claim form" and that if someone other than the claimant is asserting a personal injury "state the name of the injured person or decedent." (ECF No. 16-4.) Courts have recognized that the FTCA requires that "each claim and each claimant meet the prerequisites for maintaining a suit against the government." Clayton v. United States, 913 F.Supp.2d 80, 86 (D.N.J. 2012) (citing Dalrymple v. United States, 460 F.3d 1318, 1325 (11th Cir. 2006)).

The filing of the appropriate administrative claim is an absolute jurisdictional prerequisite to maintaining a FTCA action against the federal government and cannot be waived. McNeil v. United States, 508 U.S. 106, 109 (1993); Lightfoot v. United States, 564 F.3d 625, 627 (3d Cir. 2009). District courts lack subject-matter jurisdiction over suits filed under the FTCA if the plaintiffs have failed to comply with the FTCA's requirements. McNeil, 508 U.S. at 109. As the FTCA is a waiver of sovereign immunity by the United States, its requirements are to be strictly construed. Roma v. United States, 344 F.3d 352, 362 (3d Cir. 2003).

The purpose of these administrative requirements is to provide the government with notice of all claims being asserted against it in order to avoid unfair surprise and to promote fair and expeditious settlement or defense of the government's liabilities. Hause v. United States, 378 Fed. App'x 158, 159 (3d Cir. 2010) (citing Roma, 344 F.3d at 362); Tucker v. United States Postal Service, 676 F.2d 954, 958 (3d Cir 1982).

### 2. Motion to Dismiss 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject-matter jurisdiction. "'When subject-matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion.'" Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 191 n.4 (3d Cir. 2011) (quoting Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)). A motion to dismiss for lack of subject-matter jurisdiction may either (1) "attack the complaint on its face" or (2) "attack the existence of subject-matter jurisdiction in fact, quite apart from any pleadings." Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). "The defendant may facially challenge subject-matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject-matter jurisdiction." D.G. v. Somerset Hills School Dist., 559 F.Supp.2d 484, 491 (D.N.J. 2008). On a facial attack, "the court must consider the allegations of the complaint as true." Mortensen, 549 F.2d at 891.

"A defendant can also attack subject-matter jurisdiction by factually challenging the jurisdictional allegations set forth in the complaint." D.G., 559 F.Supp.2d at 491. Upon a factual attack, by contrast, the court need not presume the truth of the allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. Moreover, when considering a factual challenge to the court's jurisdiction under Rule 12(b)(1), the court is "not confined to the allegations in the complaint ... and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891). The United States is factually attacking this court's subject-matter jurisdiction.

### 3. Pennsylvania Law – Loss of Consortium

The law of the state where the acts of negligence and injury allegedly occurred is applied to determine the government's liability under the FTCA. Nazarenus, 1996 WL 156408, at *2 (citing 28 U.S.C. § 2674). Under Pennsylvania law, a non-injured spouse may not prevail on a loss of consortium claim unless the injured spouse prevails on his or her own personal injury claim. See Barchfeld v. Nunley, 577 A.2d 910, 912 (Pa. Super. Ct. 1990). To that extent, the validity of a loss of consortium claim is derivative of the validity of the injured spouse's claim. Nevertheless, "a loss of consortium claim is a separate and distinct cause of action, although derivative, from the injured spouse's claim." Id.; see also Nunamaker v. New Alexandria Bus Co., 88 A.2d 697, 699–700 (Pa. 1952) (same).

### C. Analysis and Conclusion

Numerous courts interpreting Pennsylvania law have, upon consideration of arguments similar to Plaintiffs', concluded that the FTCA requires the non-injured spouse to provide separate notice of his or her loss of consortium claim to the appropriate agency. Clayton, 913 F.Supp.2d at 86; Jensen v. United States, No. 09-2977, 2009 WL 4117357, at * 3 (E.D. Pa. Nov. 24, 2009); Dungan v. Coastal Indus., Inc., 96 F.Supp.2d 481, 485 (E.D. Pa. 2000); McDevitt v. United States, 963 F.Supp. 482, 484 (E.D. Pa. 1997); Nazarenus v. United States, 1996 WL 156408, at * 2 (E.D. Pa. 1996); Ferguson v. United States, 793 F.Supp. 107, 110 (E.D. Pa. 1992); Susanin v. United States, 570 F.Supp. 25, 26 (W.D. Pa. 1983); Collins v. Gen. Motors Corp., 101 F.R.D. 1, 3 (W.D. Pa. 1982); see Matsko v. United States, No.  2005 WL 2416337 at *5 (W.D. Pa. Sept. 30, 2005) (collecting decisions). Although the claim is dependent upon the spouse's claim, it is a separable cause of action, requiring separate administrative exhaustion.

Plaintiffs reliance on Loper v. United States, 904 F.Supp. 863 (N.D. Ind. 1995), and Casey v. United States, 635 F.Supp. 221 (D. Mass. 1986), to support their argument that a loss of consortium claim can be advanced even where a spouse does not file a separate SF-95, is unavailing. As an initial matter, neither decision interprets Pennsylvania law. In addition, in both cases the wife was explicitly listed as a claimant on the husband's form, and in Loper, the wife even signed the SF-95 along with her husband.

There is no dispute in this case that Mrs. McCluskey is not mentioned by name on Mr. McCluskey's SF-95, there is no reference on that form to any loss, harm, or injury to Mrs. McCluskey, and Mrs. McCluskey did not sign that form. (ECF No. 7-3.) The form discloses only Mr. McCluskey's contraction of Legionnaire's disease, and seeks damages as a result of that injury. The form's indication that Mr. McCluskey is married, standing alone, is insufficient to put the government on notice that Mrs. McCluskey was asserting a separate claim for damages against the government. Jensen, 2009 WL 4117357, at * 5 (citing Klimaszewski v. United States, No. 96–7093, 1997 U.S. Dist. LEXIS 4677, at *2–3 (E.D. Pa. Apr. 9, 1997); Rode v. United States, 812 F.Supp. 45, 47 (M.D. Pa. 1992)).

Plaintiffs' arguments at the motion hearing that Mrs. McCluskey's claim should not be dismissed because it is derivative of Mr. McCluskey's claim and because the government received notice of her claim when Mr. McCluskey indicated on his SF-95 that he was married, are unsupported by, and are in fact contradicted by, relevant case law. Mrs. McCluskey did not satisfy the FTCA's requirements that all claims be presented to the agency prior to filing suit. Count III must be dismissed due to a lack of subject-matter jurisdiction.

## II. Estoppel

### A. The Facts

Plaintiffs argue that even if Mrs. McCluskey was required to file her own SF-95, the government should be estopped from challenging her claim. (ECF No. 10 at 4-5.) In support of this claim, plaintiffs contend that the VA University Drive Hospital and certain unidentified "VA representatives" and "agents" remained silent with respect to the steps necessary to preserve Mrs. McCluskey's loss of consortium claim. (Id.) In response to this argument, the government notes that plaintiffs fail to identify any misrepresentation or affirmative misconduct on behalf of government agents, and, in any event, were represented by counsel at the time Mr. McCluskey submitted his claim. (ECF No. 16 at 3-4.)

### B. The Law

An estoppel claim requires a plaintiff to prove (1) misrepresentation by the other party, (2) on which he reasonably relied, (3) to his detriment. United States v. One Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber, Serial No. LW001804, No.15-2202, 2015 WL 4461603, at *26 (E.D. Pa. July 22, 2015) (citing United States v. Asmar, 827 F.2d 907, 912 (3d Cir. 1987)). In claims against the government, a plaintiff must also prove "affirmative misconduct." Id.; Office of Personnel Management v. Richmond, 496 U.S. 414 (1990) (recognizing that estoppel may lie against the government in "extreme circumstances").

### C. Analysis and Conclusion

Plaintiffs failed to identify any misrepresentation or affirmative misconduct on the part of any government agent in this case. Plaintiffs' argument consists of three sentences, unsupported by any law or evidence, repeating that unidentified VA officials remained silent even though they knew that Mrs. McCluskey held a loss of consortium claim. (ECF No. 10 at 5.)

Plaintiffs provide no detail about what officials met with them about Mr. McCluskey's illness, what they were told, or what they asked about. In any event, even accepting plaintiffs' allegations as true, plaintiffs fail to explain how a VA official's failure to advise them specifically about Mrs. McCluskey's loss of consortium claim could qualify as affirmative misconduct. Plaintiffs, therefore, cannot satisfy the first element of their estoppel claim, or the additional element applicable when the doctrine is invoked against the government.

In any event, the record reflects that Mr. McCluskey was represented by counsel at the time he filed his SF-95, making it difficult for plaintiffs to prove reasonable reliance on whatever statements may have been made, or not made, by the VA officials.

Plaintiffs did not establish that the government must be estopped from challenging the procedural validity of Mrs. McCluskey's claim.

## III. Conclusion

For the foregoing reasons, Mrs. McCluskey's loss of consortium claim, pled in Count III of the complaint, must be dismissed due to a lack of subject-matter jurisdiction. An appropriate order will be entered contemporaneously with this opinion.

DATED: September 25, 2015　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　/s/ *Joy Flowers Conti*
　　　　　　　　　　　　　　　　　　　　　Joy Flowers Conti
　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge